UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| MICHELLE WHEELER, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | CAUSE NO. 3:05-CV-421 RM |
| | ) | |
| RONALD LAWSON, individually and in his official capacity as an officer of the Starke County Sheriff's Department; ROBERT SIMS, in his official capacity as Sheriff of Starke County; and the COUNTY COMMISSIONERS OF STARKE COUNTY, INDIANA, | ) ) ) ) ) ) ) ) ) | |
| | ) | |
| Defendants | ) | |

## OPINION and ORDER

This cause is before the court on the motion of Ronald Lawson, Robert Sims, and the Starke County Commissioners for summary judgment on Michelle Wheeler's claims against them. Also pending is Ms. Wheeler's motion to strike portions of the exhibits submitted by the defendants in support of their summary judgment motion. For the following reasons, the court denies the motion to strike and grants the summary judgment motion.

## FACTS

The following facts are taken from the summary judgment record and viewed in the light most favorable to Ms. Wheeler, as the non-moving party. Payne

v. Pauley, 337 F.3d 767, 770 (7th Cir. 2003). In April 2004, Michelle Wheeler lived with her three children in a home in Knox, Indiana. She was separated from her husband, Darren Wheeler. Darren didn't live with Ms. Wheeler, but he visited the children at the house approximately once a week.

The house where Ms. Wheeler and her children lived had an attached two-car garage and a separate detached garage located on the side of the property. The attached garage was outfitted with a video surveillance camera that allowed the door of detached garage to be monitored from inside the house. The detached garage was used for storing tools, a go-cart, bicycles, a lawnmower, patio equipment, clothing, and other miscellaneous items. Several flammable items were also stored in the detached garage, including fuel for the go-cart, propane tanks for a gas grill, paint, starter fluid, and carburetor fluid.

On April 5, Darren came to Ms. Wheeler's home with Mark Dillard, Ms. Wheeler's cousin. Darren and Mark told Ms. Wheeler they were going to work on Mark's van in the detached garage. Ms. Wheeler didn't go into the garage that day, but, instead, remained in the house. She had no contact with anyone other than Darren, who came into the house to eat lunch and dinner.

Ms. Wheeler reports that when Darren left the premises that evening around 8:00 p.m., Mark stayed to work on his van. Ms. Wheeler went to bed around 10:30 p.m. and awoke around 1:00 a.m. to the sound of an explosion. From her bedroom window, Ms. Wheeler saw that the detached garage was on fire, and she called 911. Ms. Wheeler then called Darren and Mark and learned that Russell Dillard,

Mark's brother, had also been in the garage that evening. Law enforcement and fire department officials arrived within five to ten minutes and found the garage engulfed in flames. Authorities discovered Russell Dillard's body in the garage.

Detective Ronald Lawson of the Starke County Sheriff's Department investigated the fire. He questioned Ms. Wheeler, asking her if she knew what had caused the fire and if she knew whether anyone had been making drugs in the garage. Ms. Wheeler claimed no knowledge of either. Detective Lawson also questioned Darren Wheeler, who claimed he had not seen any drugs in the garage and offered his opinion that Ms. Wheeler was not guilty of any criminal conduct. Detective Lawson didn't speak with any other witnesses.

While at the scene, Detective Lawson observed two ruptured propane tanks and starting fluid cans at the point of the origin of the fire, evidence he knew to be consistent with a methamphetamine lab fire. Detective Lawson also noted the existence of the video surveillance system mounted on the side of the attached garage and focused on the detached garage's door. Detective Lawson sought assistance from Detective Daniel Anderson, a specialist in drug and methamphetamine cases with the Starke County Sheriff's Department. Detectives Lawson and Anderson received additional assistance in processing the scene from Trooper Thomas Quinn of the Indiana State Police Clandestine Laboratory Team. Further investigation revealed that the garage had also contained a furnace, starting fluid cans, lithium battery strips, and a plastic bag with powder in it. A field test indicated that the powder was methamphetamine. Detective Lawson

received information from the AIT (American Institute of Toxicology) Laboratories that autopsy tests performed on Russell Dillard revealed the presence of methamphetamine in his system.

Detectives Lawson and Anderson prepared incident reports detailing their findings and conclusions, and thereafter each signed an Affidavit of Probable Cause – Detective Anderson on April 28 and Detective Lawson on May 3 – relating to a charge of maintaining a common nuisance against Michelle Wheeler. A criminal information was filed against Ms. Wheeler on June 9 in the Starke Circuit Court charging her with maintaining a common nuisance, a class D felony. Detective Lawson arrested Ms. Wheeler on June 22; she posted bond and was released that same day.

In November 2004, the charge against Ms. Wheeler was dismissed on motion of the Starke County Prosecutor's Office. Ms. Wheeler filed suit in this court claiming injury and damages under "42 U.S.C. §§ 1983 and 1988; Article I, § 11 of the Indiana Constitution; and under the laws of the State of Indiana" resulting from the actions and inactions of Detective Lawson, individually and in his official capacity as an officer of the Starke County Sheriff's Department, Starke County Sheriff Robert Sims, and the Starke County Commissioners.[1] Ms. Wheeler

---

[1] Because Ms. Wheeler hasn't responded to the defendants' arguments that she isn't entitled to relief on her claims under 42 U.S.C. § 1983 based on a violation of her Fifth or Fourteenth Amendment rights [Deft. Memo., at 2 n.1], can't maintain an action under Article I, § 11 of the Indiana Constitution [Deft. Memo., at 22-23], and hasn't advanced any other state law claims [Deft. Memo., at 2 n.2], the court views any such claims Ms. Wheeler may have made in her complaint as having been waived.

seeks compensatory and punitive damages, prejudgment interest, attorney fees, and costs.

MOTION TO STRIKE

Ms. Wheeler moved to strike certain documents and statements submitted by the defendants in support of their motion for summary judgment. Specifically, Ms. Wheeler asks the court to strike

(1) the medical examiner's report (Deft. Exh. C) and a laboratory report from AIT Laboratories (Deft. Exh. F) as not properly authenticated and containing inadmissible hearsay;

(2) the Incident Report of Detective Ron Lawson (Deft. Exh. G and I) and the Incident Report of Detective Daniel Anderson (Deft. Exh. J) as containing inadmissible hearsay statements;

(3) statements allegedly made by Michelle Wheeler (relating to a drug dealer named "Bear" and a rumor that Russell Dillard was killed before the fire) as being made in reliance on hearsay statements obtained by Ms. Wheeler from third parties; and

(4) the defendants' statement that Mark Dillard is currently incarcerated on charges stemming from methamphetamine production as totally irrelevant to the issues now before the court.

The defendants argue in response that the motion to strike should be denied with respect to the lab and police reports because the challenged reports are not

hearsay. Those reports, the defendants say, aren't being offered for the truth of the matters asserted, but rather to demonstrate that there was probable cause to arrest Ms. Wheeler. The defendants maintain the reports are evidence of the affect the information provided and obtained during the investigation would have had on the officers involved.

The defendants respond that the motion to strike should be denied, as well, with respect to statements Michelle Wheeler made at her deposition as being statements within Ms. Wheeler's knowledge. The defendants maintain that because Ms. Wheeler is a party to the lawsuit, her statements would constitute a party admission and/or a statement made against penal interest and the hearsay rule would not operate to bar her statements. The defendants also say the statements relating to Russell Dillard and Mark Dillard aren't being offered for the truth of the statements, but only for the proposition that had Detective Lawson continued to investigate the incident in question he would have discovered additional evidence of drug activities that would support a finding of probable cause to arrest Ms. Wheeler.

At issue is Ms. Wheeler's claim that Detective Lawson didn't have probable cause to arrest her. Whether an arresting officer had probable cause to make an arrest

> turns on whether a reasonable person in the officer's position would have probable cause to believe that an offense has been committed. This inquiry, in turn, depends upon whether the facts and circumstances communicated to the arresting officer at the time of the arrest would warrant a reasonable officer in holding such a belief.

<u>Woods v. City of Chicago</u>, 234 F.3d 979, 987 (7th Cir. 2000); *see also* <u>Kelley v. Myler</u>, 149 F.3d 641, 647 (7th Cir. 1998) ("Probable cause does not depend on the witness turning out to have been right; it's what the police know, not whether they know the truth that matters.").

In their summary judgment submissions, the defendants don't rely on the truthfulness of the information contained in the lab and police reports; instead, they argue the reports demonstrate that Detective Lawson had enough information to support a finding of probable cause to arrest Ms. Wheeler. Because Detective Lawson's probable cause determination is a central issue, the lab and police reports are not hearsay. Ms. Wheeler's motion to strike the lab and police reports is denied. Ms. Wheeler has challenged other portions of the defendants' submissions – statements relating to a drug dealer named "Bear," the possibility that Russell Dillard was killed prior to the fire, and Mark Dillard's current incarceration on charges unrelated to the facts of this case – but because those statements wouldn't affect the outcome of the summary judgment ruling, the remainder of her motion to strike will be denied as moot.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to the interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). In deciding

whether a genuine issue of material fact exists, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [her] favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). There is no genuine issue of material fact when a rational trier of fact could not find for the nonmoving party even when the record as a whole is viewed in the light most favorable to the nonmoving party. O'Neal v. City of Chicago, 392 F.3d 909, 910-911 (7th Cir. 2004). "The mere existence of an alleged factual dispute will not defeat a summary judgment motion; instead, the nonmovant must present definite, competent evidence in rebuttal." Butts v. Aurora Health Care, Inc., 387 F.3d 921, 924 (7th Cir. 2004). However, the party with the burden of proof on an issue must show that there is enough evidence to support a jury verdict in its favor. Lawrence v. Kenosha Cty., 391 F.3d 837, 842 (7th Cir. 2004); *see also* Johnson v. Cambridge Indus., Inc., 325 F.3d 892, 901 (7th Cir. 2003) ("As we have said before, summary judgment 'is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events.'" (*quoting* Schacht v. Wisconsin Dep't of Corr., 175 F.3d 497, 504 (7th Cir. 1999)).

DISCUSSION

*Count I*

Ms. Wheeler alleges in Count I of her complaint that Ronald Lawson, individually and in his official capacity as an officer of the Starke County Sheriff's

Department, violated her right under the Fourth Amendment to the United States Constitution to be free from an unreasonable search and seizure of her person. Ms. Wheeler claims Detective Lawson, who was "at all material times . . . a duly appointed and acting police officer of the Starke County Sheriff's Department . . . acting under color of law," Compl., ¶ 5, signed a probable cause affidavit containing material misrepresentations and then, without a warrant, falsely arrested, imprisoned, frisked, and detailed her without probable cause or excuse to do so. Compl., ¶¶ 11, 13. Ms. Wheeler claims she suffered physical pain, extreme embarrassment, emotional trauma, and loss of reputation and standing in the community.

Suit under 42 U.S.C. § 1983 requires Ms. Wheeler to demonstrate that Detective Lawson, while acting under color of state law, deprived her of rights secured by the United States Constitution. <u>Baker v. McCollan</u>, 443 U.S. 137, 140 (1979). To establish an arrest in violation of the Fourth Amendment, Ms. Wheeler must show that Detective Lawson "knowingly or intentionally or with reckless disregard for the truth, made false statements to the judicial officer, and that the false statements were necessary to the judicial officer's determinations that probable cause existed for the arrest." <u>Mannoia v. Farrow</u>, 476 F.3d 453, 458 (7th Cir. 2007) (*quoting* <u>Beauchamp v. City of Noblesville</u>, 320 F.3d 733, 742-743 (7th Cir. 2003)).

An officer who possesses discretionary or policymaking authority may be entitled to qualified immunity in a suit challenging the constitutionality of his

actions. <u>Mannoia v. Farrow</u>, 476 F.3d at 457. "Such defendants are not subject to liability unless their actions violate clearly established statutory or constitutional rights then known to a reasonable officer." <u>Billings v. Madison Metropolitan Sch. Dist.</u>, 259 F.3d 807, 816 (7th Cir. 2001). Detective Lawson maintains he is entitled to qualified immunity with respect to Ms. Wheeler's false arrest claim. "Under the doctrine of qualified immunity, probable cause to arrest will defeat an unlawful arrest claim." <u>Smith v. Lamz</u>, 321 F.3d 680, 684 (7th Cir. 2003); *see also* <u>Morfin v. City of East Chicago</u>, 349 F.3d 989, 997 (7th Cir. 2003) ("It is well settled that the actual existence of probable cause to arrest precludes a § 1983 case for false arrest."). Although the privilege of qualified immunity is a defense, the plaintiff has the burden of defeating it. <u>Mannoia v. Farrow</u>, 476 F.3d at 457.

Resolution of the qualified immunity issue requires the court to first determine whether the facts, considered in the light most favorable to Ms. Wheeler, show that Detective Lawson's conduct violated a constitutional right; if those facts amount to a constitutional violation, the court then must decide if the constitutional right violated was firmly established at the time of the alleged injury, such that a reasonable officer would understand that his actions were in violation of that right. <u>Saucier v. Katz</u>, 533 U.S. 194, 201-202 (2001). Determination of probable cause generally is a jury question, but a court "appropriately may conclude that probable cause existed as a matter of law 'when there is no room for a difference of opinion concerning the facts or the reasonable

10

inferences to be drawn from them.'" Booker v. Ward, 94 F.3d 1052, 1057 (7th Cir. 1996); *see also* Smith v. Lamz, 321 F.3d 680, 684 (7th Cir. 2003) ("when 'what happened' questions are not at issue, the ultimate resolution of whether probable cause existed is a question of law").

Whether probable cause existed to make an arrest requires a determination of "whether, at the time of the arrest, the facts and circumstances within the officer's knowledge were sufficient for the officer to form a reasonable belief to suspect criminal activity." Smith v. Lamz, 321 F.3d at 684-685.

> Probable cause, however, does not require evidence sufficient to support a conviction, nor even evidence demonstrating that it is more likely than not that the suspect committed a crime. So long as the totality of the circumstances, viewed in a common sense manner, reveals a probability or substantial chance of criminal activity on the suspect's part, probable cause exists.

United States v. Sawyer, 224 F.3d 675, 678-79 (7th Cir. 2000) (citations omitted); *see also* Beauchamp v. City of Noblesville, 320 F.3d 733, 743 (7th Cir. 2003) ("Probable cause is only a probability or substantial chance of criminal activity, not a certainty that a crime was committed.").

The Indiana statute under which Ms. Wheeler was charged provides, in relevant part, that a person who knowingly or intentionally maintains a building, structure, or other place that is used one or more times by persons to unlawfully use controlled substances, or for unlawfully manufacturing, keeping, offering for sale, selling, or delivering controlled substances or items of drug paraphernalia commits maintaining a common nuisance, a Class D felony. IND. CODE § 35-48-4-

13(b). Thus, to have had probable cause to arrest Ms. Wheeler for maintaining a common nuisance, Detective Lawson, first, must have had probable cause to believe she maintained the detached garage. The word "maintain" in the statute is given its ordinary meaning, which includes the right to own or possess the premises. Jones v. State, 807 N.E.2d 58, 66-67 (Ind. Ct. App. 2004). There is no dispute that Ms. Wheeler had a possessory interest in the detached garage.

Next, Detective Lawson needed probable cause to believe Ms. Wheeler knew the garage was being used for one of the drug-related activities specified in the statute. No one disputes that people other than Ms. Wheeler had access to the detached garage. When access to the premises is not exclusive, Indiana courts have looked to the law of constructive possession to determine whether the defendant knew contraband was present. Factors to be considered include incriminating statements made by the defendant, attempted flight or furtive gestures by the defendant, a drug manufacturing setting, proximity of the suspect to contraband, location of the contraband within plain view, and location of the contraband in close proximity to items owned by the defendant. Smith v. State, 787 N.E.2d 458, 460 (Ind. Ct. App. 2003).

Several factors are present here. Evidence of a methamphetamine lab was found in Ms. Wheeler's garage, including lithium batteries, ruptured propane tanks, fertilizer, starting fluid containers with holes punched in the bottom, and a strong smell of ammonia. Methamphetamine was found in the garage. And although the garage was 500-600 feet from the house, the contraband in the

garage was located in close proximity to personal items belonging to Ms. Wheeler and her children, such as bicycles, patio furniture, clothes, and toys. In addition, a security camera was focused on the detached garage, with a monitor in the house that could be viewed at all times by Ms. Wheeler. The presence of these factors lends support to a finding that Detective Lawson reasonably believed Ms. Wheeler was aware of the drug activity in her garage. *See* Jones v. State. 807 N.E.2d 58, 65 (Ind. Ct. App. 2004) (affirming a conviction for maintaining a common nuisance where two of these factors – a drug manufacturing setting and location of contraband in close proximity to items owned by the defendant – were present).

Finally, Detective Lawson needed probable cause to believe that the garage had been used more than once for drug activities. Bryant v. State, 660 N.E.2d 290, 302 (Ind. 1995); Bale v. State, 785 N.E.2d 641, 645 (Ind. Ct. App. 2003). Ms. Wheeler claims that, at most, Detective Lawson had probable cause to believe that a single incident of drug activity had occurred in the garage. She emphasizes Detective Lawson's statement in his deposition that the April 6, 2004 incident was the first and only time he was aware of alleged drug activity on the property. However, the existence of a laboratory setting raises an inference that drug activity was ongoing. *Compare* Breitweiser v. State, 704 N.E.2d 494, 500 (Ind. Ct. App. 1999) (presence of live marijuana plants, timers, lights, a CO2 tank, fertilizer, and marijuana seeds suggested ongoing marijuana cultivation at residence); Riding v. State, 527 N.E.2d 185, 188 (Ind. Ct. App. 1988) (presence of marijuana and scale

for weighing marijuana found sufficient to permit inference that room was maintained for purpose of selling marijuana), *with* Hook v. State, 775 N.E.2d 1125, 1127 (Ind. Ct. App. 2002) (evidence that one person unlawfully used drugs in the home insufficient to establish maintaining a common nuisance); Sayre v. State, 471 N.E.2d 708, 716 (Ind. Ct. App. 1984) ("The possession of paraphernalia which is associated solely with the use of controlled substances is not probative on the issue of whether the defendant kept controlled substances in the building."). As already discussed, there was ample undisputed evidence of a methamphetamine lab in the garage, which supports a finding that Detective Lawson's belief that the garage had been used for continuing drug activity was reasonable.

Ms. Wheeler argues Detective Lawson's findings weren't reasonable because she doesn't match "the profile of a drug manufacturer" and others weren't interviewed or charged in connection with the drug activity. Ms. Wheeler wasn't charged with drug possession or with manufacturing methamphetamine; she was charged with knowingly maintaining the structure where methamphetamine was manufactured. *See* Newby v. Indiana Dept. of State Revenue, 826 N.E.2d 173, 176 (Ind. Tax 2005) ("a person may commit maintaining a common nuisance without having possessed controlled substances"); Sayre v. State, 471 N.E.2d 708, 717 (Ind. Ct. App. 1984) (same). Ms. Wheeler notes, too, that she and her husband both told Detective Lawson that she wasn't involved in criminal activity. But "criminal suspects frequently protest their innocence, and a suspect's denial of

14

guilt generally is not enough to trigger a duty to investigate in the face of . . . readily observable events." <u>Beauchamp v. City of Noblesville</u>, 320 F.3d 733, 745 (7th Cir. 2003). While Ms. Wheeler maintains she didn't know her garage was being used for drug-related activities, claims she rarely entered the garage, and points out that others had access to the garage, the issue isn't whether Ms. Wheeler actually knew there was drug activity or contraband in the garage, but whether Detective Lawson reasonably believed she knew of it. Ms. Wheeler's arguments don't negate the evidence found at the scene or render Detective Lawson's conclusion that drug activity was taking place in the garage unreasonable.

Ms. Wheeler also argues that Detective Lawson's investigation was improper and cursory because he didn't make a tape of the scene, return to the scene in daylight hours to conduct a "follow up" investigation, or interview Mark Dillard. She notes that after Detective Lawson arrested her, he recommended his own wife as a bondsman. She says, too, that her call to 911 to report the fire should have indicated to Detective Lawson that she was unaware of the presence of the drug lab. Even if Detective Lawson's investigation had been more thorough – and more professional in terms of recommending a bondsman other than his wife – Ms. Wheeler hasn't challenged any of the evidence found at the fire scene, nor has she explained or demonstrated how additional investigative measures would have led to different findings. Detective Lawson's investigation and the evidence from the scene led him to the conclusion that probable cause existed to believe Ms.

Wheeler's garage had been used for drug activity and that she was aware of that activity.[2] "Once a police officer discovers sufficient facts to establish probable cause, [he] has no constitutional obligation to conduct any further investigation in the hope of discovering exculpatory evidence." Hodgkins v. Peterson, 355 F.3d 1048, 1061 (7th Cir. 2004).

Ms. Wheeler also asserts that Detective Lawson "intentionally misrepresented" facts in the criminal complaint, pointing to the portion of the Information which states that the offense occurred "on or about March and April 2004," when, in fact, the fire occurred on April 6. The Information charges that "on or about March or April 2004" Ms. Wheeler maintained a common nuisance in Starke County, Indiana. Ms. Wheeler hasn't explained how the allegation of the time frame of her unlawful conduct amounted to a misrepresentation when the text of the Information makes no mention of the April 6 fire. Ms. Wheeler's allegation that Detective Lawson "intentionally misrepresented" facts provides no support for a finding that Detective Lawson "knowingly or intentionally or with reckless disregard for the truth, made false statements to a judicial officer." Mannoia v. Farrow, 476 F.3d 453, 458 (7th Cir. 2007). In addition, Ms. Wheeler hasn't alleged or argued that the "on or about March or April 2004" phrase in the

---

[2] Ms. Wheeler's complaint doesn't include any claims against Detective Daniel Anderson of the Starke County Sheriff's Department, who worked with Detective Lawson in the investigation and gathering of evidence from the scene of the garage fire, filed a report containing the same findings and conclusions as those of Detective Lawson, and, like Detective Lawson, submitted an affidavit attesting to his belief that there was probable cause to charge Ms. Wheeler with maintaining a common nuisance.

Information was necessary to a judicial officer's determination that probable cause existed for her arrest. *Id.* Ms. Wheeler can't prevail on her claim that Detective Lawson violated her Fourth Amendment rights in this regard.

Under Indiana law, a "[r]easonable suspicion exists where the facts known to the officer, together with the reasonable inferences arising from such facts, would cause an ordinarily prudent person to believe that criminal activity has or is about to occur." Baldwin v. Reagan, 715 N.E.2d 332, 337 (Ind. 1999). Detective Lawson investigated the fire at Ms. Wheeler's garage and found evidence of a methamphetamine lab, a quantity of methamphetamine, and a surveillance camera focused on the garage that could be monitored from inside Ms. Wheeler's house. Based on the totality of the circumstances then known to Detective Lawson and reasonable inferences drawn from those circumstances, Detective Lawson had probable cause to believe criminal activity had occurred on Ms. Wheeler's property and probable cause to arrest Ms. Wheeler for maintaining a common nuisance under IND. CODE § 35-48-4-13. Thus, the court needn't consider, under the second prong of the Saucier test, whether the right violated was clearly established at the time of the alleged wrong. Detective Lawson is entitled to qualified immunity from liability and is entitled to summary judgment on Ms. Wheeler's claims against him.

*Count II*

17

Ms. Wheeler alleges in Count II of her complaint that Robert Sims, in his official capacity as Sheriff of Starke County, and the Commissioners of Starke County, Indiana, "inadequately supervised and trained its police officers, including Defendant Ronald Lawson, with respect to matters relating to criminal investigations and the detainment and arrests of criminal suspects," which "amounted to policies or customs exhibiting deliberate or conscious indifference to the constitutional rights of persons, which caused the violation of [her] clearly-defined constitutional rights" under the Fourth Amendment to the United States Constitution. Compl., ¶¶ 17, 18. According to Ms. Wheeler, the defendants maintained an unconstitutional policy of permitting arrests to be made without probable cause and permitted officers to arrest citizens without proper training and oversight, all of which amounted to deliberate indifference to the rights of citizens.

Unconstitutional policies or customs can take three forms: "(1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although unauthorized by written law or express municipal policy, is so permanent and well-settled as to constitute a custom or usage with the force of law; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." <u>Phelan v. Cook County</u>, 463 F.3d 773, 789 (7th Cir. 2006). Ms. Wheeler claims the Starke County Sheriff's Department had an unwritten, unconstitutional policy of permitting arrests without probable cause and a practice that permitted officers to arrest citizens without proper training

and oversight. She claims the Sheriff and Commissioners "buried their heads in the ground by permitting the policy and custom of illegal arrests to occur, which amounted to deliberate indifference to the rights of citizens." Resp., at 20.

Ms. Wheeler first claims that "there was a total absence of any meaningful guidelines at the Starke County Sheriff's Department about how to make arrests." Resp., at 21. She complains that the Merit Board's Rules and Regulations contain "a single, vague sentence" about how arrests are to be made, don't explain or reference "probable cause," contain no clear guidelines about how evidence is to be secured and gathered, and make it impossible for officers to "ascertain the parameters of his or her duties in the context of an arrest." Resp., at 21-22. She takes issue with Sheriff Sims's deposition statement that he didn't believe officers should be routinely tested on how to make arrests, and she asserts that even if officers attend a yearly continuing education seminar, "routine training and evaluation of job performance is still required on a more frequent basis." Resp., at 21. Ms. Wheeler concludes that those factors make "clear that [Detective] Lawson and other officers have not been properly training on these matters, which amounted to deliberate indifference to [her] constitutional rights." Resp., at 21.

The court can't agree. "Allegations about what is not in the manual hardly establish that [Starke County] adopted a policy or had a custom of [illegal arrests] or that it was indifferent to people's rights." Alexander v. City of South Bend, 433 F.3d 550, 557 (7th Cir. 2006). Neither can Ms. Wheeler demonstrate the existence of an unexpressed policy by relying on the single incident of her own arrest, which

she claims to have been made without probable cause. Ms. Wheeler must present "more evidence than a single incident to establish liability." <u>Calhoun v. Ramsey</u>, 408 F.3d 375, 380 (7th Cir. 2005); *see also* <u>Phelan v. Cook County</u>, 463 F.3d 773, 790 (7th Cir. 2006) ("in cases attacking gaps in express policies, what is needed is evidence that there is a true municipal policy at issue, not a random event"). "The usual way in which an unconstitutional policy is inferred, in the absence of direct evidence, is by showing a series of bad acts and inviting the court to infer from them that the policymaking level of government was bound to have noticed what was going on and by failing to do anything must have encouraged or at least condoned, thus in either event adopting, the misconduct of subordinate officers." <u>Jackson v. Marion County</u>, 66 F.3d 151, 152 (7th Cir. 1995). Ms. Wheeler hasn't carried her burden of demonstrating an unconstitutional policy or practice of permitting arrests without probable cause, especially in light of the court's conclusion that her arrest was not without probable cause. The defendants are entitled to summary judgment on her failure to train claim.

Ms. Wheeler has also alleged that "supervision over police procedures was grossly lacking in the present case." She complains that Sheriff Sims didn't set standards for training and education of officers, the Merit Board's Rules and Regulations don't require Sheriff Sims to conduct job performance evaluations of his officers, and Sheriff Sims stated he doesn't believe such evaluations are necessary. Ms. Wheeler's claims don't tell the whole story. First, Sheriff Sims testified that he hadn't supplemented the rules and regulations adopted by the

20

Sheriff's Merit Board or the code of conduct established by the Indiana Sheriffs' Association. Sims Dep., at 10-15, 19. Next, Sheriff Sims noted that the State of Indiana mandates that all officers have sixteen hours of training each year and explained that that training is implemented through seminars and training sessions on various topics presented by the Indiana Sheriffs' Association, the county prosecutor's office, and the training officer of the Starke County Sheriff's Department. Sims Dep., at 15-18. Lastly, Sheriff Sims explained that he didn't undertake specific job evaluations because he keeps current on the activities of all officers and is aware of officers' job performances by monitoring the police radio daily, keeping up-to-date on cases and the outcomes of those cases, and reading daily reports and monthly logs kept by the officers. Sims Dep., at 25-29.

"With respect to the failure to supervise allegation, the plaintiff must show that these defendants, through their personal actions, were deliberately indifferent in their failure to supervise adequately the alleged perpetrator." <u>Kitzman-Kelley v. Warner</u>, 203 F.3d 454, 459 (7th Cir. 2000). Ms. Wheeler hasn't done so. She hasn't alleged or demonstrated deliberate indifference on the part of the Sheriff or the Commissioners or shown that the Sheriff or the Commissioners "had notice of a potentially serious problem of unconstitutional conduct, such that the need for corrective action or supervision was obvious, and yet failed to investigate or correct the situation." <u>Amnesty America v. Town of West Hartford</u>, 361 F.3d 113, 128 (2d Cir. 2004). Ms. Wheeler's summary conclusion that police procedures in

this case were "grossly lacking" doesn't establish an unconstitutional policy of failure to supervise by the Sheriff or the Commissioners.

Ms. Wheeler also contends that the Starke County Commissioners are policymakers for the Sheriff's Department and should be liable to her because the Commissioners "created and/or acquiesced to all or part of the unconstitutional policies" that caused her alleged injuries. Resp., at 23. Under Indiana law, "the county sheriff is the final policymaker for law enforcement in his or her particular jurisdiction." Eversole v. Steele, 59 F.3d 710, (7th Cir. 1995). Ms. Wheeler hasn't cited to any unconstitutional policy "created and/or acquiesced to" by the Commissioners relating to the operation of the Starke County Sheriff's Department. She mistakenly states that the Sheriff "cannot set standards for training and education of officers without approval by the Commissioners," Resp., at 23, in reliance on a provision of the Merit Board Rules and Regulations that states the Sheriff is to implement rules and regulations approved by the Sheriff's Merit Board, not the County Commissioners. Pltf. Exh. H. In addition, Ms. Wheeler's citation to Sheriff Sims's deposition statements relating to his understanding of the Commissioners' policymaking authority doesn't raise a genuine issue of material fact as to whether the Commissioners did, in fact, make policy relating to the Starke County Sheriff's Department. *See* Resp., at 23.[3]

---

[3] In response to the question, "What [is] the county commissioners' involvement in the sheriff's department," Sheriff Sims responded that the Commissioners "can make policies as far as buildings" and acknowledged that the Commissioners implemented a drug-free policy for the county. Sims Dep., at 20. Sheriff Sims was also asked, based on the provision in the Merit Board's

(continued...)

The summary judgment record provides no support for Ms. Wheeler's summary conclusion that Sheriff Sims and the Commissioners "intentionally turned a blind eye to those officers who perform poorly on the job, such as [Detective] Lawson." Resp., at 23. She has pointed to no evidence that would tend to support her claim of inadequate supervision, <u>Phelan v. Cook County</u>, 463 F.3d 773, (7th Cir. 2006) ("The plaintiff must introduce evidence demonstrating that the lawful practice was so pervasive that acquiescence on the part of policymakers was apparent and amounted to a policy decision."); she has cited no incidents or problems with other investigations that would tend to support her claim of a policy or pattern of inadequate supervision, <u>Alexander v. City of South Bend</u>, 433 F.3d 550, 557-558 (7th Cir. 2006) ("the shortcomings in this investigation are not indicative of a custom or policy; rather, they are indicative of one flawed investigation"); she has offered no argument or explanation about how additional supervision of Detective Lawson, Detective Anderson, or Trooper Quinn would have or could have changed the outcome of their investigation of the fire and their discovery of the methamphetamine lab in her garage, <u>Inkel v. Connecticut Dept. of Children and Families</u>, 421 F. Supp.2d 513, 524-525 (D. Conn. 2006) ("without any allegation of what additional or correct information should have been submitted, or how such information would have resulted in the [officers] reaching

---

[3](...continued)

Rules and Regulations stating that the Sheriff is responsible for discharging all obligations and duties assigned by the Commissioners, "what duties have [the Commissioners] assigned to you." Sheriff Sims stated that the "County Commissioners haven't assigned me any duties." Sims Dep., at 20.

different conclusions," plaintiff failed to state a claim for failure to train and supervise). Nothing in the record supports Ms. Wheeler's conclusion that a lack of proper supervision in the investigation of the fire at her garage resulted in a deprivation of her constitutional rights. The defendants are entitled to summary judgment on her claim of failure to supervise.

CONCLUSION

Based on the foregoing, the court concludes that Detective Lawson had probable cause to arrest Ms. Wheeler for maintaining a common nuisance and no reasonable jury could conclude that Sheriff Sims and the Starke County Commissioners engaged in inadequate training and supervision that resulted in injury to Ms. Wheeler. Ms. Wheeler's motion to strike portions of the defendants' summary judgment submissions [docket # 35] is DENIED, and the defendants' motion for summary judgment [docket # 33] is GRANTED. The final pretrial conference of April 2, 2007 and the jury trial scheduled for April 9 are VACATED, and the clerk is DIRECTED to enter judgment for the defendants.

SO ORDERED.

ENTERED:   March 15, 2007

    /s/ Robert L. Miller, Jr.
Chief Judge
United States District Court

24